IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

MICHAEL ZEBLEY,
**Claimant Below, Petitioner**

**FILED**
**February 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)     No. 22-ICA-194     (JCN: 2022016901)**

TRI-STATE ROOFING & SHEET METAL COMPANY,
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Michael Zebley appeals the September 22, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Tri-State Roofing & Sheet Metal Company ("Tri-State Roofing") filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's March 4, 2022, order denying Mr. Zebley's claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Zebley is a fifty-year-old roofer employed by Tri-State Roofing. On November 30, 2021, he sought treatment for back pain with Gregory Lacek, PA-C, reporting to Mr. Lacek that he wanted to "get established with a new health care provider" and that he was "here because he has done roofing for many years and 'his body is beat up.'" Mr. Zebley reported a medical history that included lifting a rubber roll at work "years ago" that caused low back pain; being in a car wreck thirty years earlier and being told he had three vertebrae fused into one; undergoing an MRI of his spine fifteen years earlier and being prescribed Opana; fracturing his wrist six years earlier and being told he would suffer severe arthritis for the rest of his life; and having stiffness and difficulty turning his head over the previous six weeks. Most recently, Mr. Zebley reported slipping on ice three weeks earlier while at work. Mr. Zebley related that he had hurt his back again and had discomfort down his lateral and posterior left leg, and numbness in the left anterior medial thigh when he sat in certain positions. Mr. Zebley stated that he was taking nothing for the pain, and that his

---

[1] Petitioner is represented by Thomas D. Hall, Esq. Respondent is represented by James W. Heslep, Esq.

employer was aware of his injury. Mr. Lacek diagnosed Mr. Zebley with chronic low back pain and noted it was ongoing and worsening recently. The medical record indicates that Mr. Zebley asked to have an MRI, but Mr. Lacek explained that he should have some treatment before proceeding with an MRI. Mr. Zebley was prescribed physical therapy, an x-ray of the lumbosacral spine, and sulindac, an anti-inflammatory medication.

Mr. Zebley returned to Mr. Lacek on January 18, 2022, for a follow-up regarding chronic low back pain. X-rays of his neck and back were both unremarkable with no evidence of acute injury. Mr. Zebley reported he stopped taking the prescribed sulindac because it caused him stomach cramps, and that the physical therapy made his back pain worse. Mr. Lacek's notes state:

> [Mr. Zebley] states that he feels all 'crumpled up' from arthritis in his back. He states that he spends 80% of his time bending over doing roofing, and it is painful. He denies radicular symptoms. He disputes the radiologist's report on his x-ray. He said that he looked at the x-rays himself and saw where his spine was 'completely crooked.'

Mr. Lacek ordered the spinal MRI that Mr. Zebley requested.

The impression from the January 26, 2022, MRI of the lumbar spine was disc bulging, facet arthropathy, and ligamentum flavum infolding at L4-5 causing severe spinal canal stenosis and thecal sac compression; mild degenerative changes at other levels; and a 4.6 cm solid appearing right renal mass concerning for malignancy. Mr. Zebley was urged to follow-up for further renal evaluation concerning the mass, which was eventually determined to be cancerous.

On February 14, 2022, Mr. Zebley saw neurosurgeon Pedro Aguilar, M.D., for complaints of lower back pain extending into the left anterior lateral thigh. Dr. Aguilar informed Mr. Zebley that his impending treatment for the renal mass would take priority, but once his renal issues were resolved, he could most likely offer him a one level lumbar decompression surgery at L4-5.

On February 15, 2022, Tri-State Roofing completed a claim filing form, noting that Mr. Zebley first notified his employer of his November 5, 2021, slip and fall on ice via text message on February 1, 2022, at 12:20 p.m. The form notes that Mr. Zebley did not notify anyone at the time of the incident and did not stop working. He continued to work until January 14, 2022. The employer noted it would like to have a medical evaluation performed as Mr. Zebley did not file the report of injury until several months after the incident, and during imaging a mass was found on his kidney.

Mr. Zebley signed a WC-1 form on February 19, 2022, alleging an injury to his back from slipping on ice while working. Pish Medical Associates completed the physician's

portion of the form on February 22, 2022, submitting a diagnosis of low back pain and neck pain. The first date of treatment was listed as November 30, 2021. The indication regarding whether the injury aggravated a prior injury/disease was recorded as "unknown."

On February 25, 2022, Mr. Zebley saw Rekha Galla, M.D., at Horizon Spine and Pain, complaining of low back pain. Mr. Zebley reported that he worked as a roofer for the past ten years and had back problems on and off. He slipped on ice on November 5, 2021, and stated that he thought the pain had worsened since that event. He claimed he was off work at the time of this office visit because of his bladder cancer and also because of his low back pain.

On March 4, 2022, the claim administrator issued an order denying Mr. Zebley's claim on the basis that the disability complained of was not due to an injury or disease received in the course of and resulting from employment, and because the medical records did not support the allegation that the incident was work-related. Mr. Zebley protested the decision.

On March 22, 2022, Mr. Zebley returned to Dr. Galla and reported pain mostly in his back radiating into his leg, but also high in his right kidney. He stated the pain was 10/10 and reported that he "has had this pain for years." He was upset that he was prescribed oxycodone instead of OxyContin. Dr. Galla recommended epidural steroid injections, but Mr. Zebley refused, citing his ongoing cancer treatments.

On April 7, 2022, Mr. Zebley saw physiatrist Kuk S. Lee, M.D., at Uniontown Pain Management after a referral by Dr. Galla for long-term pain management. Dr. Lee's "present illness" section of the medical record includes the statement, "[h]e miss[ed] a step and fell on the ice in the beginning of last November. Ever since he has had this back problem." There is no mention of Mr. Zebley's prior history of back pain. Mr. Zebley returned to Dr. Lee on April 25, 2022, and the note states that Mr. Zebley's kidney was removed due to a tumor on April 14, 2022. Otherwise, the record indicates that Mr. Zebley was making slow progress with his pain clinic program.

Mr. Zebley authored a letter dated May 18, 2022, in which he claimed that he slipped on ice on the roof of the Ruby Hospital Science Center while working on November 5, 2021, and injured his lower back and neck. He claimed that he went back to work because he thought he had just pulled a muscle, but "after talking to the president of the company about what happened, he told me I should get my back checked out." Mr. Zebley claimed this conversation was the impetus for seeking treatment from Mr. Lacek on November 30, 2021. Mr. Zebley also claimed that Mr. Lacek took him off work after the MRI until he could be cleared by a neurosurgeon because it was unsafe for him to do physical labor without that clearance (though no such records are part of the appendix record before this Court). Mr. Zebley further claimed that even if he did not have renal cancer, he would not be able to return to work until after he had the recommended back surgery from Dr. Aguilar,

3

which he believed would treat the alleged injury he suffered by slipping on the ice while at work.

On May 20, 2022, Mr. Zebley signed answers to interrogatories in which he responded that he had no prior injuries, conditions, or other problems with the parts of his body that are the subject of the current workers' compensation claim.

On May 25, 2022, Dr. Aguilar signed a Diagnosis Update form that included a diagnosis of "spinal stenosis of lumbar region with neurogenic claudication" and marked it as a result of a work injury. The section where the physician is intended to indicate whether the diagnosis is an aggravation of a preexisting condition was left blank.

By order dated September 22, 2022, the Board affirmed the denial of the claim, although not on the same basis that the claim administrator denied the claim in its underlying order.[2] The Board cited West Virginia Code of State Rules § 85-1-3.1 (2009), which provides that after sustaining an occupational injury, a claimant should immediately seek medical care, give notice of the occurrence of the injury to the employer, and file a workers' compensation claim. The Board's order noted that Mr. Zebley continued to work for more than two months after the alleged injury and did not advise his employer of the injury until he went off work on January 14, 2022. Without further analysis, the Board concluded that the evidence presented did not support Mr. Zebley's claim, and the rejection of the claim was appropriate. It is from the Board's order that Mr. Zebley now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence

---

[2] The Board's September 22, 2022, order does not describe the claim administrator's basis for its denial, thus rendering the Board's order not only factually deficient, but also depriving the reader of any meaningful analysis of the Board's departure from the claim administrator's reasoning.

4

on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, No. 22-ICA-10, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17546598, at *4 (Ct. App. Dec. 9, 2022).

On appeal, Mr. Zebley argues that although he did not immediately report his work-related injury to his employer, he did seek medical treatment during the same month the slip and fall occurred, and in those records, he consistently described how the fall occurred. He further asserts that despite his chronic back issues, the bulging disc injury is a discrete, new injury that should be held compensable. Mr. Zebley also argues that the Board should not have denied his claim based on his "late" reporting alone, arguing that the failure to immediately give notice should not bar his claim.

West Virginia Code of State Rules § 85-1-3.1, cited by the Board in its denial, states, in pertinent part, as follows:

> Immediately after sustaining an occupational injury, a claimant should 1) seek necessary medical care; 2) immediately on the occurrence of the injury or as soon as practicable thereafter give or cause to be given to the employer or any of the employer's agents a written notice of the occurrence of the injury; and 3) file a workers' compensation claim or request that one be filed on his or her behalf. Failure to immediately give notice to the employer weighs against a finding of compensability in the weighing of the evidence mandated by W. Va. Code § 23-4-1g and dilutes the credibility and reliability of the claim. Notice provided to the employer within two (2) working days of the injury shall be deemed immediate notice: *Provided*, **That under no circumstances shall the fact that the notice of an occupational injury was provided by the claimant later than two (2) working days from the time of the injury be the sole basis for denial of a claim**.

(Emphasis added.)

Pursuant to the above language, the Board's reliance on Mr. Zebley's dilatory reporting of the slip and fall injury to his employer as its sole basis for affirming the denial of the claim was in error. However, upon our review, we find that the record supports the denial of Mr. Zebley's claim, and we affirm on other grounds apparent in the record. *See, e.g.*, Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 333, 624 S.E.2d 769, 770 (2005) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.")

5

Here, we consider Mr. Zebley's dilatory reporting of his injury as but one factor cited by the Board that dilutes the credibility and reliability of Mr. Zebley's claim. *See* W. Va. Code R. § 85.1.3-1. The record in this case is replete with evidence that Mr. Zebley had a lengthy history of lower back pain. When he first saw Mr. Lacek on November 30, 2021, Mr. Zebley reported a litany of prior injuries and conditions related to his back and neck, some going back decades, and some going back weeks or months. However, in his interrogatory responses, Mr. Zebley denied having any prior injuries or conditions affecting the same body parts that are the subject of this claim. That denial directly contradicts statements he made to his medical providers and is another factor that dilutes the credibility and reliability of his claim. The MRI taken January 26, 2022, found disc bulging, facet arthropathy, and ligamentum flavum infolding at L4-5, among other findings, but Mr. Zebley did not present evidence that any medical professional opined that these findings were causally related to the November 5, 2021, slip and fall on the ice. The Diagnosis Update form submitted by Dr. Aguilar requested that spinal stenosis with neurogenic claudication be added to the claim and stated that it was the result of a work injury, but it did not provide whether this diagnosis is aggravating a preexisting condition. No other records were submitted from Dr. Aguilar in which he addressed how this diagnosis might have been the result of the November 5, 2021, incident. In fact, only one other medical record from Dr. Aguilar appears in the record, the initial evaluation from February 14, 2022. In that visit, Dr. Aguilar did not note any reference to a work injury or a slip and fall on ice. This lack of corroboration in the documentation from Dr. Aguilar as to how Mr. Zebley's alleged injuries are causally related to the work-related injury is yet another factor that dilutes the credibility and reliability of Mr. Zebley's claim.[3]

---

[3] The lack of medical evidence establishing that the slip and fall caused a discrete, new injury also weighs against compensability under *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). The Supreme Court of Appeals of West Virginia expanded on this standard recently, when it held:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Syl. Pt. 5, *Moore v. ICG Tygart Valley, LLC*, __ W. Va. __, 879 S.E.2d 779 (2022). Here, we need not conduct a *Moore* analysis as there is not sufficient medical evidence to establish the causal relationship between the alleged injury and the disability.

When taken together with the fact that Mr. Zebley continued working until January 14, 2021, and did not tell his employer about the November 5, 2021, slip and fall until February 1, 2022, we find that the record supports the conclusion that Mr. Zebley did not meet his burden to establish that he was injured in the course of and resulting from his employment. Therefore, the Board did not err in affirming the claim administrator's rejection of this claim.

Accordingly, we affirm the Board's September 22, 2022, order.

Affirmed.

**ISSUED:** February 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen


Judge Thomas E. Scarr, not participating

7